IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | 2:20-CV-01949-CCW |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LRG CORPORATION, LEWIS R. | ) | |
| GAINFORT, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In this case, the United States claims that Defendants LRG Corp. and Lewis R. Gainfort (collectively, "LRG") violated the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(B), by failing to approve then-tenant Monica Samulski's request for a reasonable accommodation for her son's disability in the form of an emotional support animal ("ESA")—a dog named Onyx—and for evicting her for having the ESA in February 2019. Before the Court are eight motions in limine filed by the parties. For the reasons set forth below, the Court will GRANT the United States' First Motion in Limine, ECF No. 64, Third Motion in Limine, ECF No. 74, Fourth Motion in Limine, ECF No. 79, Fifth Motion in Limine, ECF No. 81, Sixth Motion in Limine, ECF No. 83, and Seventh Motion in Limine, ECF No. 85. The Court will GRANT IN PART and DENY IN PART the United States' Second Motion in Limine, ECF No. 66. The Court will DENY LRG's sole Motion in Limine, ECF No. 71.

### I.     LEGAL STANDARD

A court's authority to rule on motions in limine comes from its inherent authority to manage trials proceedings before it, not from the Federal Rules of Evidence. *Luce v. United States*,

469 U.S. 38, 41 n.4 (1984).  Consistent with that authority, a court may screen irrelevant or otherwise improper evidence, thereby "narrow[ing] the evidentiary issues for trial and . . . eliminat[ing] unnecessary trial interruptions."  *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990);  *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988) ("A trial judge has a duty to limit the jury's exposure to only that which is probative and relevant and must attempt to screen from the jury any proffer that it deems irrelevant.").  That said, a "trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds."  *Johnstown Heart & Vascular Ctr., Inc. v. AVR Mgmt., LLC*, 2019 WL 3573663, at *3 (W.D. Pa. Aug. 6, 2019) (Gibson, J.) (internal citation omitted).

Here, the parties' motions in limine implicate Federal Rules of Evidence 402 and 403.  Rule 402 establishes the cornerstone rule that only relevant evidence is potentially admissible; irrelevant evidence, in contrast, is always inadmissible.  Evidence is relevant if it tends to make a fact of consequence to the action more or less probable.  Fed. R. Evid. 401.  Though potentially admissible, relevant evidence may nevertheless be excluded by the Constitution, a federal statute, caselaw, or another of the Federal Rules of Evidence.  *See* Fed. R. Evid. 402.  One such rule is Rule 403.  It allows a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Unfair prejudice is evidence with an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  *Pirl v. Sergeant*, --- F. Supp. 3d ----, 2022 WL 3141801, at *2 (W.D. Pa. 2022) (Gibson, J.) (internal quotation marks omitted).  The decision to exclude evidence under Rule 403 falls within the trial court's discretion. *See Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1213 (3d Cir. 1995).

II.     **DISCUSSION**

A.      **The Court Will Grant the United States' First Motion in Limine**

In its First Motion in Limine, the United States asks the Court to "exclude any testimony or evidence related to whether Sabastian Samulski brought his [ESA] to school, or requested to do so." ECF No. 64 at 1. The United States argues that this evidence should be excluded as not relevant under Rule 402 and, even if relevant, should be excluded under Rule 403 because reasonable accommodations in schools are subject to different rules than reasonable accommodations in housing. ECF No. 65 at 2. LRG responds that the evidence is relevant because school was the sort of situation that exacerbated Sabastian Samulski's mental health issues, such that the Samulskis' failure to request an ESA accommodation at school tends to show that Onyx was simply a pet, not a "genuine" ESA. ECF No. 95 at 5–7. LRG does not address the United States' Rule 403 argument.

The Court agrees with the United States that the evidence at issue in its First Motion in Limine should be excluded. To begin, any evidence concerning the Samulskis' efforts (or non-efforts) to allow Onyx to accompany Sabastian Samulski at school has limited probative value. While the Fair Housing Act governs the availability of reasonable housing accommodations, school accommodations are governed by other statutes, such as the Americans with Disabilities Act of 1990 ("ADA"). *See Regents of Mercersburg Coll. v. Republic Franklin Ins. Co.*, 458 F.3d 159, 165 (3d Cir. 2006). Importantly, although an ESA (which need not have received specialized training) may be a reasonable accommodation under the Fair Housing Act, *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 110 (3d Cir. 2017), that may not be the case under the ADA, under which the animal generally must be "specially trained to perform tasks directly related to a disability," *Anderson v. City of Blue Ash*, 798 F.3d 338, 354 (6th Cir. 2015). LRG effectively

3

concedes this point, stating that it "do[es] not intend to argue that the standard for bring [sic] an ESA to school is the same as the standard for residing with an ESA under the [Fair Housing Act]." ECF No. 95 at 6.  Thus, the Samulskis' failure to request (and receive) an accommodation that would allow Onyx to accompany Sabastian Samulski to school has little bearing on whether Onyx was a genuine ESA that LRG was obligated to accommodate.

Standing in contrast to this limited probative value is a substantial risk that the evidence would confuse the issues or mislead the jury, which LRG does not address.  Allowing LRG to present evidence and argument regarding a *school* accommodation would open the door to a mini-trial on the issue, distracting the jury from the *housing* accommodation at issue.  Given the different standards for housing and school accommodations, the jury could easily confuse the issues or be misled into equating the impropriety of an ESA accommodation at school with the impropriety of an ESA accommodation at home.  Those risks substantially outweigh the limited probative value of the evidence LRG wishes to present regarding the Samulskis' failure to request or obtain an accommodation for Onyx at school.  Accordingly, the Court will GRANT the United States' First Motion in Limine under Rule 403.

### B.    The Court Will Grant in Part and Deny in Part the United States' Second Motion in Limine

In its Second Motion in Limine, the United States asks the Court to exclude the testimony of an LRG employee, Lynn Allen, to the extent that Ms. Allen would testify that she heard Onyx barking in February 2019, *after* LRG initiated eviction proceedings against the Samulskis.  ECF Nos. 66, 67 at 1–2.  According to the United States, this evidence is irrelevant because it could not have informed LRG's earlier decision to evict the Samulskis and, even if relevant, should be excluded under Rule 403.  ECF No. 67 at 3–5.  LRG agrees that Ms. Allen's testimony would not be relevant to its decision to evict the Samulskis but argues that it should be allowed to introduce

4

her testimony in order to impeach any testimony by Monica Samulski that Onyx could not bark (or at least could not bark loudly enough to be heard outside the apartment) after October 2018. ECF No. 95 at 8–9.

The Court agrees with the parties that Ms. Allen's testimony is not relevant to the eviction decision and therefore it will GRANT in part the United States' Motion and exclude the evidence as offered for that purpose. However, the Court agrees with LRG that this evidence may be used to impeach Monica Samulski if she testifies that Onyx could not bark, or at least could not bark loudly enough to be heard outside of the apartment after she took measures to address any barking in October 2018. Using extrinsic evidence to contradict a witness' testimony is a permissible form of impeachment and whether Onyx was barking after October 2018 is of consequence to LRG's reasons for evicting the Samulskis. *See United States v. Greenidge*, 495 F.3d 85, 99 (3d Cir. 2007); *Primus v. Target Corp.*, 532 F. App'x 314, 315 (3d Cir. 2013). The probative value of the evidence as it pertains to Ms. Samulski's credibility is not substantially outweighed by any of the risks set forth in Rule 403. Accordingly, the Court will GRANT IN PART and DENY IN PART the United States' Second Motion in Limine.[1]

## C. The Court Will Grant the United States' Third Motion in Limine

In its Third Motion in Limine, the United States asks the Court to "preclude [LRG] from referring to, or offering any evidence or argument regarding, certain details about the Samulskis' family members because they are irrelevant and unduly prejudicial." ECF No. 74 at 1. The United States' Third Motion in Limine is specific to two subjects: (1) Monica Samulski's husband

---

[1] The United States indicates that LRG may call another employee, Tina Aiken, to testify that Ms. Allen told her that Ms. Allen heard Onyx barking in February 2019. ECF No. 67 at 2. For the reasons given here, Ms. Aiken's testimony regarding Ms. Allen's out-of-court statement would be irrelevant to the Samulskis' eviction but would be relevant to Ms. Samulski's credibility if she testified that Onyx could not bark (or could not bark loudly enough to be heard outside the apartment) after October 2018. The Court does not address any hearsay issues that presenting evidence of Ms. Allen's out-of-court statements might raise.

"allegedly being 'wanted' by the Westmoreland County Sheriff's Department";  and (2) a prior civil suit against Monica Samulski for unpaid rent brought by her mother.  ECF No. 75 at 1.  In response, LRG agrees not to present evidence regarding the first subject but argues that evidence regarding the prior civil suit is relevant to Monica Samulski's "state of mind and motivation at the time she was apartment hunting," which "bears on whether Ms. Samulski obtained an ESA letter for the family dog to enable her to evade prohibitions against pets."  ECF No. 95 at 9.

The Court agrees with the United States that the evidence regarding Monica Samulski's civil suit for unpaid rent should be excluded under Rule 403.  On the one hand, any probative value that the evidence has regarding Monica Samulski's motivation to evade LRG's pet prohibition is limited because it would require the jury to draw tenuous inferences about Monica Samulski's willingness to obtain a sham ESA approval from the fact that her mother had filed suit against her for unpaid rent.  On the other hand, that limited probative value is substantially outweighed by the risk of unfair prejudice, confusing the issues, and misleading the jury.  As to unfair prejudice, the jury could hear the evidence of a suit against Monica Samulski for unpaid rent and conclude that she is generally dishonest or a poor tenant and enter a verdict accordingly.  As to confusion of the issues and misleading the jury, the evidence of Monica Samulski's prior civil suit for unpaid rent risks distracting from the issues in this case, which do not concern unpaid rent.  Accordingly, the Court will GRANT the United States' Third Motion in Limine under Rule 403.

### D.   The Court Will Grant the United States' Fourth Motion in Limine

In its Fourth Motion in Limine, the United States asks the Court to preclude "[LRG] from referring to, or offering any evidence or argument at trial, concerning [LRG's] updated reasonable accommodation and/or assistance animal policies, which were implemented after [LRG] initiated eviction proceedings against [the Samulskis]."  ECG No. 79 at 1.  Because LRG agrees that the

evidence is irrelevant, the Court will GRANT the United States' Fourth Motion in Limine. *See* ECF No. 95 at 2.

### E.      The Court Will Grant the United States' Fifth Motion in Limine

In its Fifth Motion in Limine, the United States asks the Court to "exclude any evidence or argument suggesting that the investigation conducted by the U.S. Department of Housing and Urban Development (HUD) into the facts of this matter was inadequate." ECF No. 81 at 1. LRG responds that it agrees "not to introduce testimony or evidence challenging the sufficiency of the HUD investigation, provided that the United States does not offer evidence, testimony or argument indicating that HUD found probable cause to believe that illegal housing practices had occurred." ECF No. 95 at 3. Based on LRG's further representation that the United States has agreed not to present any evidence that HUD found probable cause of a Fair Housing Act violation, the Court will GRANT the United States' Fifth Motion in Limine. *See id.*

### F.      The Court Will Grant the United States' Sixth Motion in Limine Without Prejudice to LRG Renewing Certain Arguments at Trial

In its Sixth Motion in Limine, the United States asks the Court to exclude "certain portions of Sabastian Samulski's medical records and preclude LRG from referring to, or offering as evidence or argument at trial, those portions." ECF No. 83 at 1. Those portions of Sabastian Samulski's medical records concern his father and, separately, an incident where Onyx bit Sabastian Samulski in July 2019 during a mental health episode. *See* ECF No. 84 at 1. The United States contends that the evidence is irrelevant, highly prejudicial, and likely to confuse the issues and mislead the jury. *Id.* LRG responds that it does not intend to offer the evidence insofar as it concerns Sabastian Samulski's father, but that it should be allowed to present evidence about the bite. ECF No. 95 at 3–4. Specifically, LRG argues that the bite is relevant because: (1) "it goes to whether Onyx is genuinely an ESA"; (2) the events surrounding and leading up to [the mental

health episode when Onyx bit Sabastian Samulski] are directly relevant to the claim for emotional distress associated with that [episode]"; and (3) "it impeaches Monica Samulski's . . . testimony that Onyx calms Sabastian." *Id.* at 10. The Court will address these points in order.

*First*, Onyx biting Sabastian Samulski in July 2019 is irrelevant to whether Onyx was a "genuine" ESA. The United States contends that LRG violated the Fair Housing Act when it failed to grant the Samulskis' request for a reasonable accommodation and then evicted them in February 2019. Thus, the only relevant issue is whether Onyx was a "genuine" ESA as of February 2019 or some earlier time. The bite, which took place some five months later, is not relevant to that inquiry.

*Second*, Onyx biting Sabastian Samulski in July 2019 is irrelevant to emotional distress damages associated with the mental health episode during which the bite occurred. On this point, all LRG argues is that "[i]n order for the Defendants to have a full and fair opportunity to challenge causation for this [episode and the hospitalization that it resulted in], it must be permitted to fully explore the events that immediately led up to it, which includes the dog bite." ECF No. 95 at 11. While LRG certainly may explore facts that tend to prove or disprove causation, it has done nothing to show that the bite is such a fact. The fact that Onyx bit Sabastian Samulski during the episode does not have any bearing on whether LRG's conduct caused the episode, which in turn caused the hospitalization. To the extent that the bite had some probative value regarding Sabastian Samulski's emotional distress, it would be substantially outweighed by the risk of confusing the issues or misleading the jury, given that the bite is irrelevant to a key and superficially related issue: whether Onyx was a "genuine" ESA.

*Third*, the evidence that Onyx bit Sabastian Samulski in July 2019 during a mental health episode would not be admissible to impeach Monica Samulski if she testifies as she did in her

deposition.  Based on her deposition testimony, LRG argues that Monica Samulski will likely testify that Onyx calms Sabastian Samulski when he is experiencing a "meltdown or issues with coping." ECF No. 95 at 10–11.  That testimony, however, was not as broad as LRG suggests.  In response to a question about when Sabastian Samulski first obtained ESA authorization, Monica Samulski testified that it was not until after she decided to move out of her mother's home, where she and her son lived prior to moving into their LRG apartment.  ECF No. 42-4 at 79:24–81:2. Monica Samulski explained that ESA approval was unnecessary prior to that point because her mother knew that Onyx would "calm [Sabastian Samulski] down if he was having . . . any sort of, like, meltdown or issue with coping." *Id.* at 80:18–81:2.  In context, Monica Samulski's testimony was thus limited to Onyx's effect on Sabastian Samulski prior to the Samulskis' move to their LRG apartment.  The fact that Onyx bit Sabastian Samulski about a year later does not contradict Monica Samulski's testimony and is therefore irrelevant to the issue of her credibility.  *Cf. Greenidge*, 495 F.3d at 99.

Accordingly, the Court will GRANT the United States' Sixth Motion in Limine under Rules 402 and 403.  However, the Court will do so without prejudice to LRG's ability to renew its arguments regarding admissibility once Monica Samulski has testified on direct examination.  If, at that time, her testimony differs meaningfully from the deposition testimony discussed above, the Court may revisit its ruling and consider whether evidence of the July 2019 bite may be used for impeachment.  Until that time, LRG may not present evidence or argument regarding the bite.

### G.    The Court Will Grant the United States' Seventh Motion in Limine

In its Seventh Motion in Limine, the United States asks the Court to "exclude any testimony or evidence related to [LRG's] handling of other tenants' requests for accommodations." ECF No. 85 at 1.  The United States argues that it has not alleged a pattern or practice of discrimination, and

that LRG's granting ESA requests for other tenants is irrelevant to its handling of the Samulskis' or, at least, unduly prejudicial.  ECF No. 86 at 1.  In its response, LRG agrees that any evidence regarding requests for accommodation that post-date the Samulskis' eviction is irrelevant but indicates that it does seek to present evidence regarding a single 2017 request that predates the eviction.  ECF No. 95 at 3.

The Court agrees that the evidence at issue in the United States' Seventh Motion in Limine should be excluded.  The fact that LRG may have granted a reasonable ESA request for another tenant does not mean that *the Samulskis'* ESA request was unreasonable.  In contrast, allowing LRG to present evidence regarding another tenant's ESA request would open the door to a mini-trial regarding LRG's treatment of that request, distracting the jury from the issue of LRG's treatment of the Samulskis.  Any probative value that the evidence might have would therefore be substantially outweighed by the risk of confusing the issues, misleading the jury, or wasting time.  Accordingly, the Court will GRANT the United States' Seventh Motion in Limine under Rules 402 and 403.

### H.    The Court Will Deny Without Prejudice LRG's Motion in Limine

In its sole Motion in Limine, LRG asks the Court to preclude the United States from claiming emotional distress damages or offering evidence of the same.  ECF No. 88 at 1.  The thrust of LRG's argument is that the United States cannot establish that the Samulskis suffered a physical manifestation of emotional distress, as required to obtain emotional distress damages, or that LRG caused those damages.  *Id.* at 2–4.  The United States responds that it will be able to establish its entitlement to emotional distress damages at trial, and thus that LRG's motion is premature.  ECF No. 97 at 1.

The Court agrees with the United States that LRG's Motion in Limine is premature.  As to LRG's argument that the United States must prove that one or both of the Samulskis suffered a physical manifestation of emotional distress, it is too soon to say whether the United States' evidence will fall short of that bar, to the extent that it is a requirement at all.  *Cf. Bolden v. Se. Pa. Transp. Auth.*, 21 F.3d 29, 33 (3d Cir. 1994) (affirming award of emotional distress damages in action brought under 42 U.S.C. § 1983 where plaintiff "offered no evidence of physical effects of distress or of having received counseling");  *see Zebley v. Judge*, No. CIV.A. 11-6258, 2013 WL 1092688, at *2 (E.D. Pa. Mar. 14, 2013) ("It is well settled that motions in limine address evidentiary questions and are inappropriate devices for resolving substantive issues, such as the sufficiency of the evidence to support a claim or defense." (cleaned up)).  As for LRG's causation argument, it rests on questionable legal and factual foundations.  Legally, LRG argues that only expert evidence can establish that LRG's conduct caused the Samulskis' emotional distress, but the caselaw does not appear to support that contention.  *See Bolden*, 21 F.3d at 33. at 30, 34 ("[W]e are persuaded that the approach taken by our sister circuits which have dispensed with a requirement of expert testimony to corroborate a claim for emotional distress is more consistent with the broad remunerative purpose of the civil rights laws.").  In any event, the United States contends that it *will* present expert evidence on causation because Dr. Bindu Gutti will testify regarding "the manner and extent to which [LRG's] conduct exacerbated [Sabastian Samulski's] disabilities or affected his physical and/or mental health."  ECF No. 57 at 3.  Thus, factually, LRG's causation argument also fails at this juncture.  LRG's Motion in Limine is therefore DENIED without prejudice to LRG renewing its objections at a later date.

## III.   CONCLUSION

For the foregoing reasons, the Court resolves the parties' motions as follows:

- The Court GRANTS the United States' First Motion In Limine.  The parties shall not offer evidence or elicit testimony as to whether Sabastian Samulski brought his ESA to school or whether the Samulskis requested that he be able to do so.

- The Court GRANTS IN PART and DENIES IN PART the United States' Second Motion in Limine.  Testimony or statements of Ms. Allen that she heard the ESA barking in February 2019 are admissible only for the purpose of impeaching Monica Samulski if she testifies that the ESA could not bark, or could not bark loudly enough to be heard outside the apartment, after October 2018.

- The Court GRANTS the United States' Third Motion in Limine.  The parties shall not refer to or offer any evidence or argument regarding Monica Samulski's husband allegedly being "wanted" by the Westmoreland County Sheriff's Department, or the civil suit that Monica Samulski's mother filed against her for unpaid rent in 2018.

- The Court GRANTS the United States' Fourth Motion in Limine.  The parties shall not offer any evidence or argument regarding LRG's updated reasonable accommodation and/or assistance animal policies, which were implemented after LRG initiated eviction proceedings against the Samulskis.

- The Court GRANTS the United States' Fifth Motion in Limine.  The parties shall not offer any evidence or argument suggesting that the investigation conducted by the U.S. Department of Housing and Urban Development (HUD) into the facts of this matter was inadequate, or suggesting that HUD found that there was probable cause of a violation of the Fair Housing Act.

- The Court GRANTS the United States' Sixth Motion in Limine.  The parties shall not offer any evidence or argument concerning the portions of Sabastian Samulski's medical records discussed in the Motion.  The parties shall not offer any evidence or argument suggesting that Onyx bit Sabastian Samulski during a mental health episode that took place in July 2019.  This ruling is WITHOUT PREJUDICE to LRG renewing its argument that it should be allowed to use the bite evidence to impeach Monica Samulski's testimony at trial regarding Onyx's calming effect on Sabastian Samulski.

- The Court GRANTS the United States' Seventh Motion in Limine.  The parties shall not offer any evidence or argument concerning LRG's handling of ESA accommodations other than the Samulskis'.

- The Court DENIES LRG's Motion in Limine WITHOUT PREJUDICE to LRG renewing its objections at a later date.

DATED this 25th day of October, 2022.

12

BY THE COURT:


<u>/s/ Christy Criswell Wiegand</u>
CHRISTY CRISWELL WIEGAND
United States District Judge



cc (via ECF email notification):

All Counsel of Record